```
UNITED STATES DISTRICT COURT                        ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JEROME E. JORDAN,                              :
                                               :
                           Plaintiff,          :    MEMORANDUM
                                               :    AND ORDER
              - against -                      :
                                               :    08-CV-1041 (JG) (LB)
                                               :
CITY OF NEW YORK HUMAN RESOURCES               :
ADMINISTRATION,                                :
                                               :
                           Defendant.          :
------------------------------------------------------------ X
```

A P P E A R A N C E S:

    JEROME E. JORDAN
        9205 Schenck Street
        Brooklyn, New York 11236
        *Plaintiff,* pro se

    MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        100 Church Street
        New York, New York 10007
        By:    Jason A. Kroll
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Plaintiff Jerome Jordan was formerly employed by defendant New York City Human Resources Administration ("HRA"). Jordan brings this action contending primarily that the HRA discriminated against him on the basis of his gender and retaliated against him after he complained about discrimination. The HRA now moves for summary judgment, contending that there is insufficient evidence to support Jordan's claims. Oral argument was heard on July 30, 2010. For the reasons stated below, the motion for summary judgment is granted.

BACKGROUND

A.  *Jordan's Employment at the HRA*

Jordan was hired by the HRA in 1986. He began work as a provisional Special Officer in March of that year, and was appointed a Special Officer three months later. In June of 1995, Jordan was moved to the position of Fraud Investigator in the HRA's Bureau of Employee Verification. In that position, he was responsible for conducting investigations of welfare fraud, also known as Eligibility Verification and Review or "EVR." As part of his work, Jordan was required to go into the field with a partner and make visits to the homes of welfare claimants.

In the years 1999 to 2001, Jordan's supervisor, Wayne Booker, sent Jordan various memoranda noting allegations of misconduct on the job by Jordan. For example, a welfare recipient claimed that, on a visit to her home, Jordan rang her doorbell and walked away before she had the chance to answer the door. In addition, Booker complained repeatedly that Jordan had failed to complete and submit timely travel logs, and warned Jordan that he could be subjected to disciplinary action if he continued to do so. One memorandum accused Jordan of "maintain[ing] a total disregard for EVR procedural policy." Kroll Aff., Ex. O.

On January 9, 2001, Jordan had a verbal altercation with a fellow investigator, Corinne Gilliam, while in the field. In her report of the altercation to the HRA, Gilliam stated, among other things, that Jordan drank on the job after visiting a liquor store, and that he said he was going to "Fuck Mr. Booker up and put his ass in the hospital." Kroll Aff. Ex. Q. According to Gilliam, on each house visit they made, Jordan knocked on the door, counted to three, then said "fuck it, let[']s go." *Id.* Gilliam stated that when she challenged Jordan about this behavior, Jordan became angry and made "remarks about [her] family." *Id.* On learning of Gilliam's allegations, Booker referred Jordan for disciplinary action. After a protracted process involving

2

an informal conference and a Step II hearing,[1] HRA disciplinary officers decided that Jordan should be dismissed for his January 9, 2001 actions in a decision effective March 11, 2005. Jordan filed an SDHR complaint on March 14, 2005, claiming discrimination on the basis of "age, national origin, sex." Kroll Aff. Ex. HH. He also challenged the dismissal through the grievance process. An arbitration hearing was set for June 27, 2005. Before the hearing began, however, the HRA agreed a settlement with Jordan's union representative. Pursuant to the settlement, Jordan was reinstated, but he accepted a 30-day suspension.

Jordan was later terminated again, and he challenges that second termination in this lawsuit. The disciplinary charges leading to the termination arose from allegations against Jordan in 2004 and 2005. One set of charges concerns alleged misconduct by Jordan towards Althea Appleton, a colleague senior to him in the HRA who worked on the fifth floor of 250 Livingston Street. (Jordan was based on the fourth floor.) Jordan claims that he and Appleton had an affair. On October 12, 2004, Jordan is alleged to have shown sexually explicit photographs of Appleton to co-workers. These photographs were apparently created by taking a photograph of Appleton's face and "Photoshopping" it onto photographs of a different woman. Appleton complained. According to Marilyn Lewis, Assistant Director of the HRA, two days after the incident, Jordan admitted during a meeting with her that he had shown the pictures of Appleton to others. Jordan was then instructed to stay away from the fifth floor of 250 Livingston. Nevertheless, according to Appleton, Jordan visited the fifth floor on March 4, 2005, causing Appleton to feel threatened and intimidated.

---

[1] At a Step II hearing, disciplinary officers review the evidence in the record and determine whether the employee is guilty of the charges and the appropriate punishment, if any. The employee is permitted to attend with a union representative.

The second set of charges that led to Jordan's firing concerned a welfare claimant known as "Marion H." Marion H. told the HRA that when Jordan visited her home on November 22, 2005, he asked her if she had a man and if he could "get with" her. When she declined his offer to take her out, Jordan responded: "don't you know who I am[,] all the ladies love me." Kroll Aff. Ex. AA. During the same visit, Jordan is alleged to have called Marion H. a "gold digging bitch" after she mentioned that she was seeking child support from the father of her child, though Jordan called the next day to apologize for "being nasty." *Id.*

Jordan was told that an informal conference relating to these allegations would be held on March 27, 2006. Jordan chose to forego this hearing. The HRA found that the new allegations against Jordan were substantiated and as a result terminated his employment on August 17, 2006.

B.  *The Procedural History*

Jordan challenged his termination by requesting arbitration. Marilyn Lewis and Marion H. testified for the HRA at the arbitration hearing. Jordan, represented by an attorney provided by the union, testified on his own behalf and also offered the testimony of Andre Johnson, a former HRA employee. In a written decision, the arbitrator substantially upheld the charges against Jordan and found that they supported the HRA's decision to terminate Jordan's employment. Jordan challenged the arbitrator's decision by commencing an Article 75 proceeding in the Supreme Court of New York, Kings County. Without considering the merits of the arbitrator's decision, Justice Francois Rivera set aside the arbitration award because there was no transcript of the arbitration proceedings.[2]

---

[2] The HRA has appealed the judge's decision, and that appeal remains pending before the Appellate Division, Second Department.

After receiving a right-to-sue letter from the EEOC, Jordan filed this action on March 10, 2008. His complaint states that he was falsely accused of sexual harassment, and asserts claims against the HRA for discrimination, retaliation, and "character assassination." Compl. 3. The case was initially assigned to Judge Irizarry. The HRA moved to dismiss the complaint on the ground that it was time-barred. Judge Irizarry denied the motion to dismiss, finding that Jordan had pled sufficient facts to support equitable tolling of the statute of limitations. The case was later reassigned to me. After discovery, the HRA made this motion for summary judgment.[3]

## DISCUSSION

A.  *The Standard on a Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also, e.g., Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). A fact is "material" under Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed

---

[3] The HRA provided Jordan with the required warnings for a *pro se* litigant facing a summary judgment motion. *See Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999).

in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). Once the moving party has met its burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A movant may demonstrate the absence of material factual dispute simply by pointing to the lack of evidence in support of an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-326 (1986).

B. *Jordan's Claims*

Jordan's submissions assert three claims against the HRA. First, Jordan claims that he was subjected to "sexual discrimination" when he was terminated. Second, Jordan asserts that his final termination was motivated by a desire on the HRA's part to retaliate against him for complaining about his prior termination. Third, Jordan argues that the grievance procedure for challenging his termination violated his right to due process. I take each of these claims in turn.

1. *The Gender Discrimination Claim*

Title VII provides, inter alia, that "[i]t shall be an unlawful employment practice for an employer to ... discharge any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). I analyze Jordan's gender discrimination claim using the "burden-shifting" framework provided by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under these cases, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, non-discriminatory reason" for its action. *Id.* If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may

still prevail by showing facts from which a jury could infer that the employer's determination was the result of discrimination. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where … the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). "Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Id.* (quoting *Gallo*, 22 F.3d at 1224). But even in the discrimination context, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. *Id.*

The burden of establishing a prima facie case of alleged disparate treatment at the first stage of the *McDonnell-Douglas* framework "is not onerous." *Burdine*, 450 U.S. at 253. Nevertheless, Jordan must still produce evidence tending to show that: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Holcomb*, 521 F.3d at 138. Because Jordan has failed to produce evidence to meet the fourth of these requirements, I conclude that the HRA is entitled to summary judgment on the gender discrimination claim.

Jordan simply states the conclusion that he was terminated as a result of sex discrimination without providing any evidence in support of that claim. Indeed, Jordan appears

to misunderstand the nature of sex discrimination, as the following excerpt from his deposition transcript shows:

> Q. What led you to believe you were discriminated against because of your sex?
>
> A. Because I was charged with sexual harassment.
>
> Q. What about that led you to believe that you were discriminated against because of your sex?
>
> A. The use of the memos and deliberately changed memos from the original complaint of the applicant's statements and the pursuit of sexual harassment.

Kroll Aff. Ex. C, at 94. Later, when asked again why he thought his termination was due to his sex, he replied: "Everything about this thing is directed about sex. Every allegation that they made has to do with sex. Everything that they alleged has to do with sex. Everything has to do with me … trying to degrade a woman." *Id.* at 115.

Jordan's complaint, it seems, is that he was fired after being falsely accused of sexual misconduct, not that he was terminated "because of [his] sex." 42 U.S.C. § 2000e-2(a)(1). Even if the allegations of misconduct against Jordan were fabricated and the disciplinary process reached an erroneous conclusion, those facts standing alone would not provide a basis for relief in federal court.[4] Title VII protects employees against particular forms of invidious discrimination; it does not create a cause of action for every employee who is unjustly terminated. Accordingly, Jordan's discrimination claim fails at the first stage of the *McDonnell-Douglas* analysis.[5]

---

[4] Jordan is pursuing the proper route for vindication of his wrongful termination claim by challenging his termination through the grievance process and by seeking judicial review of the arbitrator's decision in state court.

[5] The HRA contends that I should consider the arbitrator's decision as evidence of the absence of discrimination, *see Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 119 (2002), even though that decision has been vacated by the state court on Jordan's application for review under Article 75. The Kings County Supreme Court's

2. *The Retaliation Claim*

Jordan also claims that his employment was terminated in retaliation against his decision to file an SDHR complaint challenging his earlier termination. Title VII forbids retaliation against an employee for complaining of prohibited employment discrimination, stating that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

Like discrimination claims, retaliation claims under Title VII are analyzed under a three-part burden-shifting framework. At the first stage, the plaintiff must present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find that (1) he engaged in a protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). To prove that the filing of his SDHR complaint was a protected activity, Jordan need not establish that he successfully described conduct amounting to a violation of Title VII in that complaint. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998). I will assume for the sake of argument that Jordan has met the *de minimis* requirement of establishing a prima facie case of retaliation, and proceed to the second stage of the analysis.

---

vacatur of the arbitrator's decision certainly deprives that decision of any collateral estoppel effect, but the HRA maintains that the decision still constitutes admissible evidence against Jordan's claim because the decision was vacated only on technical grounds. For the reasons stated in the text, I find that Jordan's claim fails without considering the arbitrator's decision, so I need not determine whether the decision may properly be considered on this motion.

At the second stage, I conclude that the HRA has more than met its burden to introduce evidence that, taken as true, would permit the conclusion that there was a nonretaliatory reason for firing Jordan. *See Cifra*, 252 F.3d at 216 (at the second stage, the employer's obligation is to "point[] to evidence of a legitimate, nonretaliatory reason for the challenged employment decision"). Even prior to the incidents that triggered his termination, there were serious questions about Jordan's conduct dating back at least to 1999. The HRA was then informed of substantial allegations that Jordan had engaged in sexual harassment of two women, one a colleague and the other a welfare recipient whose case Jordan was assigned to investigate. In these circumstances, it is clear that the HRA possessed an entirely legitimate reason for terminating Jordan's employment.

Because the HRA has met its burden under the second stage of the burden-shifting framework, the question is whether Jordan has "point[ed] to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *See Cifra*, 252 F.3d at 216.

Jordan has failed to provide evidence of pretext. Causation may be established by direct evidence of retaliatory animus, or " 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.' " *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)). Jordan has provided no direct evidence of retaliatory intent, and though he was fired after he complained about his prior termination, the termination did not "closely follow[]" his protected activity. *See id.*; *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The charges that resulted in his final termination came roughly a year after the SDHR complaint, thus weakening any

10

inference of causation. In light of the exceptionally serious allegations of misconduct against Jordan, he is required to produce more than his subjective belief that that the firing was pretextual in order to survive summary judgment. He has not done so, and I therefore find that no rational jury could conclude that retaliation was the motive for Jordan's termination, and grant summary judgment to the HRA on this claim.

    3.    *The Due Process Claim*

Jordan alleges that he was deprived of his constitutional right to due process because he was terminated without an "official hearing." Compl. 4. In addition, the complaint asserts that the HRA violated his rights to due process because it took almost a year after he was terminated to receive an arbitration date. *Id.*

The HRA appears to concede that Jordan possessed a constitutionally protected liberty interest in his tenure as a public employee. *See Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997). However, "[w]hen [] a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001).

In this case, the record makes plain that Jordan was afforded both of these kinds of procedural rights pursuant to the collective bargaining agreement. First, when the allegations against him were brought to the HRA's attention, Jordan was notified of those allegations and given an opportunity to participate in an informal conference, where he could give his side of the story prior to the disciplinary decision.[6] Second, after the termination, the HRA gave Jordan the

---

    [6]    Though the opportunity to contest the charges prior to termination was afforded to Jordan, he elected to pursue the grievance procedure instead.

option, exercised by Jordan, of contesting the decision in a full adversarial hearing before a neutral arbitrator. At the hearing, Jordan was represented by an attorney who presented Jordan's own testimony and the testimony of another witness and cross-examined the witnesses against Jordan. These procedures have often been held to satisfy the requirements of procedural process, and Jordan has provided no basis for a conclusion that they did not in his case.[7] *See, e.g., Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) ("We have held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement").

## CONCLUSION

For the reasons stated above, the motion for summary judgment is granted. The Clerk of Court is respectfully direct to enter judgment in favor of the defendant.

So ordered.

John Gleeson, U.S.D.J.

Dated:   August 1, 2010
         Brooklyn, New York

---

[7] I doubt that a one-year delay in commencing an arbitration hearing could be sufficiently lengthy to constitute a violation of Jordan's right to due process, but in any event the only evidence in the record concerning the delay shows that the arbitration date was chosen "by mutual agreement of the parties." Kroll Aff. Ex. GG. That agreement negates any possibility that the HRA could be held responsible for the delay in affording Jordan a hearing.